UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X     **COMPLAINT**
HUMAYUN CHAUDHRY,                          )
                                            )
                           Plaintiff,        )     **JURY TRIAL DEMANDED**
                                            )
    -against-                              )
                                            )
THE CITY OF NEW YORK; and                  )
POLICE OFFICER PATRICK CHERRY              )
(Shield No. 1492)                           )
Individually and in His Official Capacity  )
                                            )
                          Defendants.       )
------------------------------------------------------------X

## NATURE OF ACTION

1.  This is an action in which HUMAYUN CHAUDHRY ("Plaintiff") seeks money damages, both compensatory and punitive, an award of attorney's fees and costs related to the action, and any other such relief as this Court deems equitable and just, for violation of his civil rights pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States. Plaintiff also asserts supplemental claims under New York State law, pursuant to the Constitution of the State of New York.

## JURISDICTION AND VENUE

2.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States. This being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights,

jurisdiction is thereby conferred upon this Court by 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343.

3. The Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all New York State law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

4. Venue is proper in this district, pursuant to 28 U.S.C. §§ 1391 (b) and (c) in that Defendant THE CITY OF NEW YORK is administratively located within the Southern District of New York, and the unlawful practices complained of herein occurred within the Southern District of New York.

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action on each and every one of Plaintiff's claims as pleaded herein.

## PARTIES

6. Plaintiff HUMAYUN CHAUDHRY ("Plaintiff") is a resident of Kings County in the City and State of New York.

7. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area

2

of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD").

9. At this time of this incident, Defendant PATRICK CHERRY was a Detective with the NYPD, who, upon information and belief, was working under Shield No. 1492. At all times relevant herein, he was an officer, employee and agent of THE CITY OF THE NEW YORK and/or the NYPD, a municipal agency of the Defendant THE CITY OF NEW YORK. Defendant PATRICK CHERRY is sued in his individual and official capacities as a member of the NYPD.

10. Defendant was at all times relevant herein acting under color of state law in the course and scope of his duties and functions as an officer, agent, servant and employee of Defendant THE CITY OF NEW YORK, was acting for, and on behalf of, and with the power and authority vested in him by THE CITY OF NEW YORK and the NYPD, and was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duties.

11. Each and all of the acts of the Defendant alleged herein were done by said Defendant while acting within the scope of his employment by Defendant THE CITY OF NEW YORK and/or the NYPD, which is responsible for the training, retention, supervision, promotion, discipline and control of police officers and supervisory police officers, including the individually named Defendants herein.

3

## NOTICE OF CLAIM

12. On June 8, 2015, Plaintiff, with the assistance of his former counsel, timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the facts underlying Plaintiff's claim against Defendant, THE CITY OF NEW YORK, and THE NEW YORK CITY POLICE DEPARTMENT.

13. The City assigned a claim number to Plaintiff's claim (2015PI017397). On August 17, 2015, Plaintiff was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h.

14. To date, no answer has been received by Plaintiff and no compensation has been offered by Defendant THE CITY OF NEW YORK in response to this claim. At least thirty (30) days have elapsed since the service of the Notice of Claim.

15. This action was commenced within one year and ninety days of the date of the occurrence of the events described herein.

## STATEMENT OF FACTS

16. Plaintiff, at the time of the incident described herein, was thirty-two years old, a male of Pakistani descent.

17. On March 30, 2015, at approximately 1:20 P.M. Plaintiff was working as an Uber driver and was driving two customers to their desired location. The two customers were seated in the back seat of Plaintiff's vehicle.

18. Plaintiff stopped at a traffic light, facing west on West 15th Street in Manhattan, and anticipating a left turn onto the West Side Highway (officially the Joe DiMaggio Highway).

4

19. Plaintiff's left turn signal was illuminated and blinking. The vehicle in front of the Plaintiff was that of the Defendant. Upon information and belief, the Defendant was driving an unmarked, black Hyundai Sante Fe. At that time, the Defendant's left turn signal was not illuminated, the Defendant's vehicle's hazard lights were not engaged, nor were the Defendant's vehicle's reverse lights illuminated.

20. When the traffic light turned green, the Defendant moved his vehicle slightly forward, and then abruptly engaged his vehicle into reverse in an apparent attempt to parallel-park his vehicle.

21. Plaintiff, who had also begun moving forward, then honked his horn and then lawfully moved his vehicle to the right in order to avoid a collision with Defendant's vehicle, safely pass the Defendant's vehicle, and continue to left downtown on the West Side Highway/Joe DiMaggio Highway.

22. As Plaintiff was passing the Defendant's car on the right, he casually and non-offensively signaled to the Defendant, using on an open/close hand gesture, in an effort to inform Defendant to use his blinker to indicate his intention to park.

23. Plaintiff then turned left onto the West Side Highway/Joe DiMaggio Highway and quickly noticed that the Defendant's car was approaching him from behind at a rapid speed. The Defendant's emergency police lights on the dashboard were now illuminated and flashing.

24. At this point, the Defendant was extremely angry. Defendant illuminated his emergency lights and initiated a stop of Plaintiff's vehicle solely as a result of his anger. In a video interview with NBC New York News 4 published on April 3, 2015, Defendant admitted such, and Defendant stated in this interview that he did not allege

5

that the Plaintiff had violated any of the NY Vehicle and Traffic laws. Defendant had no constitutional grounds to pursue and then stop and seize the Plaintiff. Defendant merely did so because of his uncontrollable rage and anger.

25. Nonetheless, Plaintiff immediately complied with the officer's command, and safely pulled his vehicle onto a driveway used by the NYC Sanitation Department, at approximately Little West 12th Street and the West Side Highway/Joe DiMaggio Highway.

26. At the time, and immediately prior to, the Defendant's seizure of the Plaintiff, Plaintiff was operating his vehicle in accordance with all posted traffic laws. Plaintiff was not committing any traffic infraction or other act that would have given Defendant any cause to seize Plaintiff's vehicle. Additionally, the Plaintiff's vehicle did not have any external signs of defective equipment.

27. Defendant approached Plaintiff's car in a very agitated and hostile manner, violently opened Plaintiff's driver door, and requested the Plaintiff's driver's license and vehicle registration documents.

28. Defendant politely, respectfully, and calmly asked the Plaintiff why he was requesting the documents, as the Plaintiff at this time was unaware the Defendant was a police officer.

29. At this point, the Defendant then threatened the Plaintiff with arrest.

30. Unbeknownst to the Plaintiff, at or around this time, the customer seated in the rear passenger seat of the Plaintiff's vehicle began to record the remainder of the incident on his smartphone.

31. Defendant began to berate the Plaintiff using hostile and offensive language, indicating that Plaintiff should "stop it with [your] mouth" and, while apparently mocking Plaintiff's Pakistani accent, stated, "Stop it with [your] 'for what sir, for what sir,'" and to "stop it with that bullshit."

32. Defendant then intimidatingly told the Plaintiff that he had committed three Vehicle and Traffic Law violations.

33. Defendant continued to berate the Plaintiff, stating, "I don't know what fucking planet you think you are on right now." Plaintiff, who in a scared and terrified state mistakenly thought Defendant said the word "planning", calmly answered "I am not planning, sir, I am here." The Defendant mockingly replied, "Planning? I said planet." Plaintiff then petrifyingly and confusingly answered back, "I said, ... I said I am not on any planet."

34. Defendant then abruptly and violently slammed the Plaintiff's driver-side door. Upon slamming the Plaintiff's door, Defendant then in a hostile and threatening manner stated, "Stay in your fucking car, and stay there."

35. A few seconds later, the Defendant then abruptly returned to the Plaintiff's car screamed, "Pull over five fuckin' feet! You understand me? Pull over!"

36. Plaintiff then calmly complied and moved his car several feet to the location to which the Defendant directed him.

37. About one minute later, Defendant came back to the Plaintiff's car again and began shouting in a threatening and hostile manner, stating, "Now, let me tell you something, next time you do it again, you're getting your...." Plaintiff stated "ok." Defendant, abruptly stated, "OK, what?" and, then in an inappropriately loud and

7

deafening tone, hostilely and viciously yelled in Plaintiff's face, "You going to let me fucking finish?" Plaintiff was so alarmed, harassed and threatened at this point that he turned his head away from Defendant. Defendant then shouted, "Stop interrupting me!"

38. Plaintiff repeatedly, in a calm and respectful demeanor, apologized and stated, "OK, apologize, I am sorry."

39. Defendant then stated, "Who do you think you're talkin' to here?"

40. Plaintiff replied, "Sir, I am not saying nothing."

41. Defendant then stated, "No, every time I open my mouth you have something to say. When you driving up my ass, when I'm tryin' to park the car, and then you have to do something with your hands."

42. Plaintiff stated. "Sir, I just say...." and Defendant interrupted him, answering, "I don't care what you have to say. Do you understand that?" to which Plaintiff answered, "Ok, I understand."

43. Throughout the duration of the incident, the Defendant was standing directly outside the Plaintiff's door, and was bent over in a hostile and threatening manner, placed his face very close to Plaintiff's face, while shouting.

44. Defendant then tersely asserted, "People are allowed to park their cars on the side of the street without your interference and then your opinion about what's going on, ok, especially when the person you are doing it to are the POLICE!"

45. Plaintiff continued to apologize in a calm and respectful demeanor, stating, "Ok, sir, I apologize."

46. Defendant then, presumably due to the fact that the Plaintiff is an immigrant, stated to Plaintiff, "I don't know where you're coming from, or where you think you're appropriate in doing that, that doesn't, that's not the way it works."

47. Plaintiff continued to apologize and stated that he is from Pakistan.

48. Defendant then asked the Plaintiff, "How long have you been in this country?"

49. Plaintiff answered, "Almost two years." Defendant then asked Plaintiff, "Almost how long?" to which Plaintiff again answered, "Two years." Defendant, confirming Plaintiff's response, stated, "Two years."

50. Defendant, while leaning his face down towards Plaintiff's window and while gesticulating with his right arm, stated to the Plaintiff in a hostile and threatening manner, "I got news for you, and use this lesson, remember this in the future, don't ever do that again.  The only reason you're not in handcuffs going to jail and getting summonses in the Precinct is because I have things to do. That's the only reason that's not happening. 'Cause this isn't important enough for me. You're not important enough. Don't ever do that again."

51. Defendant then addressed the two customers in the back seat of the car and asked, "You're a fare?  And this guy is taking time out of your day for his Vehicle and Traffic violations?"

52. Defendant returned the documents to Plaintiff and Defendant then walked back to his vehicle.  Defendant did not issue any citations to Plaintiff for violations of any law, under the NY Vehicle and Traffic Law, NY Penal Law, NYC Administrative Code, or otherwise.

9

53. Plaintiff was detained and seized by the Defendant without reasonable suspicion, probable cause, or any other legal justification.

54. As a result of this incident, Plaintiff suffered severe and long-term emotional injuries.

55. As a result of the events alleged herein and due to the actions taken by the Defendant, Plaintiff suffered damages. Plaintiff suffered emotional distress, mental anguish, fear, physical pain, anxiety, embarrassment, humiliation, shock, damage to reputation, and loss of earnings.

56. As a result of this incident, Plaintiff has received psychological or other medical treatment for the emotional and physical damages this incident has caused him.

## FIRST CAUSE OF ACTION
### Violation of Federal Civil Rights Under 42 U.S.C. § 1983

57. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

58. The aforementioned acts of Defendants, his agents, servants and employees were carried out under the color of state law.

59. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42. U.S.C. § 1983.

60. The acts complained of were carried out by the aforementioned Defendant in his capacity as a police officer, with all of the actual and/or apparent authority attendant thereto.

61. The acts complained of were carried out by the aforementioned Defendant in his capacity as a police officer pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officer of said department.

62. Defendant, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CAUSE OF ACTION
False Arrest/False Imprisonment under 42 U.S.C. § 1983

63. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

64. By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

65. Defendants violated the Fourth and Fourteenth Amendments because Plaintiff was unlawfully seized and unlawfully detained without probable cause, without a warrant, without privilege or consent.

66. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION
Negligent Hiring and Retention

67. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

11

68. Upon information and belief, defendant THE CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the Defendant, who conducted and participated in the incident.

69. Upon information and belief, the individual Defendant was unfit and incompetent for his position.

70. Defendant THE CITY OF NEW YORK knew, or should have known in the exercise of reasonable care, the propensities of the Defendant to engage in the wrongful conduct heretofore alleged in this Complaint.

71. Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining and retaining Defendant proximately caused each of Plaintiff's injuries.

72. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
Discrimination on the Basis of Race

73. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

74. By his conduct set forth above, the Defendant demonstrated that he was motivated in his unlawful actions by reasons of racial discrimination against Plaintiff, a Pakistani man, in violation of the New York Human Rights Law and the New York Executive Law, as well as under the laws of the Constitution of the United States, in particular the First, Fourth and Fourteenth Amendments, and his rights under the Constitution and other laws of the State of New York.

75. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
### Liability of Defendant City of New York
### For Constitutional Violations

76. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

77. Defendants, while acting under color of state law, engaged in conduct that constituted a custom, policy, usage, practice, procedure or rule of THE CITY OF NEW YORK, through the NYPD, that was forbidden by the Constitution of the United States and that was a direct and proximate cause of the unconstitutional conduct alleged herein.

78. The aforementioned customs, policies, usages, practices, procedures or rules of THE CITY OF NEW YORK, through the NYPD, included inadequate screening, hiring, retaining, training and supervising its employees, and such policies were the direct and proximate cause of the unconstitutional conduct alleged herein. As a result of the failure of THE CITY OF NEW YORK, through the NYPD, to properly recruit, screen, hire, train, discipline, and supervise its officers, including the individual Defendant named herein, Defendant THE CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

79. Defendant THE CITY OF NEW YORK, through the NYPD, owed a duty of care to Plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to Plaintiff or to those in a like situation would probably result from the foregoing conduct.

80. Upon information and belief, the individual Defendant was unfit and incompetent for his position.

81. Upon information and belief, Defendant THE CITY OF NEW YORK knew or should have known through the exercise of reasonable diligence that the individual Defendant was potentially dangerous.

82. Upon information and belief, Defendant THE CITY OF NEW YORK'S negligence in screening, recruiting, hiring, training, disciplining and supervising this Defendant proximately caused the Plaintiff's injuries.

83. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
### State Law False Imprisonment and False Arrest

84. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

85. By his conduct, as described herein, individual Defendant is liable to Plaintiff for falsely imprisoning and falsely arresting plaintiff.

86. Plaintiff was conscious of his confinement.

87. Plaintiff did not consent to his confinement.

88. Plaintiff's confinement was not otherwise privileged.

89. Defendant City of New York, as an employer of the individual Defendant officer, is responsible for their wrongdoing under the doctrine of respondeat superior.

14

## SEVENTH CAUSE OF ACTION
### State Law Assault

90. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

91. As a result of the foregoing, Plaintiff was placed in apprehension of imminent harmful and offensive bodily contact.

92. By his conduct, as described herein, the Defendants are liable to Plaintiff for having assaulted him.

93. As a result of Defendants' conduct, Plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment and humiliation.

94. Defendant THE CITY OF NEW YORK, as an employer of the individual Defendant officer, is responsible for their wrongdoing under the doctrine of <u>respondeat superior</u>.

## EIGHTH CAUSE OF ACTION
### State Law Claim for Intentional Infliction of Emotional Distress

95. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

96. By reason of the foregoing, Defendant, acting in his capacity as an NYPD officer, and within the scope of his employment, engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which constituted the intentional infliction of emotional distress.

97. The intentional infliction of emotional distress by this Defendant was unnecessary and unwarranted in the performance of his duties as an NYPD officer.

98. Defendant, his officers, agents, servants, and employees were responsible for the intentional infliction of emotional distress upon Plaintiff. Defendant THE CITY OF NEW YORK, as employer of the Defendant, is responsible for his wrongdoings under the doctrine of respondeat superior.

99. As a direct and proximate result of the misconduct and abuse of the authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
### State Law Claim for Negligent Infliction of Emotional Distress

100. Plaintiff repeats and realleges each and every allegation set forth in all previous Paragraphs as if fully set forth herein.

101. By reason of the foregoing, Defendant, acting in his capacity as an NYPD officer, and within the scope of his employment, was negligent in committing conduct that inflicted emotional distress upon Plaintiff.

102. The negligent infliction of emotion distress by this Defendant was unnecessary and unwarranted in the performance of his duties as an NYPD officer.

103. Defendant, their officers, agents, servants, and employees was responsible for the negligent infliction of emotional distress upon Plaintiff. Defendant THE CITY OF NEW YORK, as employer of the Defendant, is responsible for his wrongdoings under the doctrine of respondeat superior.

104. As a direct and proximate result of the misconduct and abuse of the authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against the Defendant:

(A)   Compensatory damages in an amount to be determined at trial;

(B)   Punitive damages in an amount to be determined at trial;

(C)   Reasonable attorney's fees, costs and interest related to this action, pursuant to 28 U.S.C. § 1988; and

(D)   Such other relief as this Court deems appropriate and equitable.


DATED:   New York, New York
         June 23, 2016

                                        Respectfully submitted,

                                        _____
                                        Gregory G. Gomez, Esq.
                                        Gomez & Vournas LLC
                                        305 Broadway, Suite 1400
                                        New York, New York 10007
                                        T: 212-323-7476
                                        F: 212-323-7477
                                        E: gg@gomezvournas.com

                                        *Attorney for Plaintiff*

# CLIENT VERIFICATION

I, HUMAYUN CHAUDHRY, being duly sworn deposes and says the following under the penalties of perjury;

I am the plaintiff in the within action, and as such, I am fully familiar with all the facts and circumstances herein.

I have read the foregoing COMPLAINT, and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters, I believe theme to be true.

Dated: New York, New York
       June 23, 2013

_____
HUMAYUN CHAUDHRY

State of New York    )
                     ) ss.:
County of New York   )

On this 23rd day of June, 2016 before me personally came Humayun Chaudhry to me known and known to me to be the individual described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same.

_____
NOTARY PUBLIC - State of New York

GREGORY GOMEZ
NOTARY
NO. 02GO6276994
QUALIFIED IN
KINGS COUNTY
COMM. EXP.
02/25/2017
STATE OF NEW YORK
PUBLIC